744 A.2d 1219 (2000)
328 N.J. Super. 117
Corrine GALLO, Joseph Gallo and Gabrielle Perret-Johnson, Plaintiffs-Appellants,
v.
MAYOR AND TOWNSHIP COUNCIL OF LAWRENCE TOWNSHIP, Lawrence Township and Lawrence Township Planning Board, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 2000.
Decided February 10, 2000.
*1220 Robert L. Grundlock, Jr., Philadelphia, PA, for plaintiffs-appellants (Rubin, Ehrlich & Buckley, attorneys; Mr. Grundlock, on the brief).
Janice B. Stonaker, Princeton, for defendants-respondents (Stonaker and Stonaker, attorneys for Mayor and Township Council of Lawrence Township; Teich, Groh, Frost & Zindler, attorneys for Lawrence Township Planning Board; Ms. Stonaker and Arthur R. Sypek, Jr. on the joint brief).
Before Judges KING, PAUL G. LEVY and CARCHMAN.
The opinion of the court was delivered by CARCHMAN, J.A.D.
The 1995 amendments to the protest provisions of the Municipal Land Use Law, N.J.S.A. 40:55D-62.1 and -63, provide for notice of zoning classification and boundary changes to those property owners located within two hundred feet of the boundaries of the district subject to the changes. The same amendments, however, exempt from its notice provisions "classification or boundary changes recommended in a periodic general reexamination of the master plan by the planning board pursuant to Section 76 of P.L. 1975, c. 291 (C.40:55D-89)." This appeal requires us to determine whether proposed zoning changes creating a higher density residential zone located adjacent to a landowner's property and recommended pursuant to the statutorily mandated six-year review of a municipal master plan, N.J.S.A. 40:55D-89, obligates a municipality to provide personal notice to those landowners who are located within two hundred feet of the boundaries of such change. Judge Feinberg, in the Law Division, concluded that the exemption provision of the statute applied, and no personal notice was required. She also rejected additional arguments regarding notice of other zoning changes located throughout the municipality as well as an allegation of spot zoning. We agree and affirm.

I.
In 1992, defendant Lawrence Township Planning Board (the Planning Board) began *1221 a reexamination of its 1987 master plan as is required at least every six years by N.J.S.A. 40:55D-89. Pursuant to the reexamination, the Planning Board gave public notice and proceeded to conduct twenty-four "work" meetings spanning a period from October 1992 and continuing through May 1995. Following the conclusion of its working sessions, in June 1995, the Planning Board on notice to the public held public hearings on the adoption of the master plan, and on June 14, 1995, the revised master plan was adopted. The new master plan proposed five zones of residential housing (R-1 through R-5), and identified the particular type of housing and the areas to which each zone applied. With respect to R-2, the zone relevant here, the master plan stated in pertinent part:
The uses proposed for the Residential 2 land use classification are single family detached housing, agriculture, and open space. Density for this category is proposed within a range of one-and-a-half to two-and-a-half (1.5 to 2.5) units per acre. The land areas proposed for this classification include the Village of Lawrenceville and almost all of the area west of the Village to Federal City Road and south of the Village to I-95.... Any future residential subdivisions should be compatible with the character of adjacent development, particularly as to the actual area and width of pre-existing lots.
Prior to the approval of the new master plan, an R-1.5 zone existed, which had a minimum lot size of approximately 30,000 square feet. The newly approved master plan eliminated the R-1.5 classification.
Subsequent to the adoption of the new master plan, the Planning Board created a subcommittee to propose an ordinance necessary to implement the new master plan. During the remainder of 1995, 1996 and 1997, various ordinance provisions were drafted and hearings were held periodically seeking public comment and reaction. Finally, in the summer of 1997, a comprehensive draft of a land development ordinance was forwarded to defendant Lawrence Township Mayor and Township Council (Township Council). The Township Council held six public hearings on the proposed ordinance, at which time additional revisions were made to the draft of the ordinance.
In July 1997, a developer filed an "Application for Subdivision Plan Review" of his property (the Development Parcel). The developer indicated in his application that this land was zoned as R-2A, although this new R-2A sub-zone had not yet been adopted. These facts were memorialized in a memo written by the Planning Board's land consultants after reviewing the developer's proposal:

Undersized Lot Variances. The proposed development appears to be designed using the proposed R-2A zoning district regulations rather than the existing R-1.5 regulations. For the plan to proceed now, the applicant would need to obtain undersized lot variances for all of the lots except lots 14 and 17 (with existing houses) and the detention basin lot.
At the November 25, 1997 planning meeting of the Township Council, the Council discussed the issue of the classifications for the area encompassing the Development Parcel and whether it should be zoned for 22,500 or 30,000 feet. The Township Council then concurred in a proposal to create three R-2 sub-zones all with differing densities (R-2A = 30,000; R-2B = 22,500; R-2C = 15,000).[1] Thereafter, at the request of the developer, the *1222 Planning Board ultimately recommended to the Township Council that the Development Parcel be included in the R-2A zone which had a density of 22,500 square feet.
In December 1997, the revised ordinance, renamed the Land Use Ordinance (LUO), and generated by the statutory periodic revision of the master plan, was introduced on first reading and a public hearing was scheduled for adoption on second reading for December 16, 1997. Among other issues discussed at that meeting was the reclassification of the development parcel to an R-2A zone.
At the December 16, 1997 hearing, plaintiffs Corinne Gallo, Joseph Gallo and Gabrielle Perret-Johnson first challenged the Township Council's right to adopt the LUO claiming that they had not been personally served with notice of the proposed change in zoning of the area adjacent to their property. It is undisputed that defendants provided the required general public notice of this hearing pursuant to N.J.S.A. 40:55D-15, but did not provide personal notice to the residents located within 200 feet of the newly created zone.
After concluding that plaintiffs were not entitled to such personal notice, the Township Council adopted the LUO by a vote of three to two and also adopted two resolutions setting forth reasons for zoning deviations from the master plan in other unrelated districts.
Plaintiffs then filed an action in lieu of prerogative writ, challenging the adoption of the LUO on the grounds that defendants failed to comply with the notice requirements of N.J.S.A. 40:55D-62.1 and -63, and that the adoption of the LUO constituted impermissible spot zoning.[2] Following Judge Feinberg's grant of summary judgment in favor of defendants, plaintiffs filed this appeal.

II.
Plaintiffs first assert that the trial court erred in holding that they were not entitled to statutory notice of the proposed zoning change of the Development Parcel pursuant to N.J.S.A. 40:55D-63.[3] (We focus our attention on N.J.S.A. 40:55D-63 rather than the parallel statute, N.J.S.A. 40:55D-62.1, which requires similar notice when there is a proposed amendment to a zoning ordinance resulting in a classification or boundary change. The latter statute contains the same exemption for changes recommended in "the periodic general reexamination of the master plan by the planning board," and there need not be a separate analysis of plaintiffs' rights under that statute. Our conclusions as to plaintiffs' right to notice under N.J.S.A. 40:55D-63 apply with equal force to plaintiffs' right to notice under N.J.S.A. 40:55D-62.1.) Plaintiffs contend that because they are entitled to protest a change in zoning they are entitled to notice under N.J.S.A. 40:55D-63.
The language of N.J.S.A. 40:55D-63, providing for the public's right to notice and protest, was amended in 1995 to exempt "classification or boundary changes recommended in a periodic general reexamination of the master plan." The statute additionally addresses the particular requirements of the parties entitled to protest *1223 and the requirements for overriding a protest. The impact of a notice requirement and the filing of a protest are significant because once a protest is lodged, the ordinance in question must be approved by a supermajoritythat is, by a vote of four-to-one rather than by a simple majority. Plaintiffs claim that the trial judge's view of the statute eviscerates their right to protest. Judge Feinberg concluded:
Despite the lack of case law, this court is satisfied that the exclusion provision of the statute is clearly an effort by the Legislature to preclude notice when a Planning Board takes any action pursuant to its reexamination obligations. The court finds that the Legislature recognized that the reexamination process involved many public meetings and hearings, and therefore, the process awards concerned individuals their due process rights without need for personal notice. The reexamination process outlined by N.J.S.A. 40:55D-89 provides for substantial public input, public debate and feedback that by its very nature precludes the need for personal notice.
No cases have interpreted or addressed the 1995 amendments to the notice requirements of N.J.S.A. 40:55D-63 that took effect on September 12, 1995.
Our first inquiry must focus on the language utilized by the Legislature in the amendments. "In the absence of any explicit indication of special meaning, words of a statute are to be given their ordinary and well understood meaning." Levin v. Township of Parsippany-Troy Hills, 82 N.J. 174, 182, 411 A.2d 704 (1980). Commentators have interpreted the change to mean just what it says: "Zoning changes, if made on the basis of a re-examination report for the Planning Board, may be enacted without complying with the notice requirements of P.L.1995, c. 249." William M. Cox, Zoning and Land Use Administration 617-18 (1999); see also Peter A. Buchsbaum, Public Notice of Zoning AmendmentsIs it Working?, NJBSA-Land Use Law Section Newsletter (March 1998). ("There is one significant exception to the notice requirement. Where a change in zoning classification or the boundaries of a zoning district results from a recommendation in a periodic general reexamination of the master plan by the planning board, no notice need be given.").
Aside from the specific language used by the Legislature in creating the exemption at issue, the Legislative purpose behind the exemption contradicts plaintiffs' position. "In construing a statute, the primary task is to `effectuate the legislative intent in light of the language used and the objectives sought to be achieved.'" In re the Adoption of N.J.A.C. 7:1I, 149 N.J. 119, 127-28, 693 A.2d 97 (1997) (quoting Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992)) (internal quotations omitted). Moreover, "`the inquiry in the ultimate analysis is to determine the true intention of the law; and to this end, the particular words are to be made responsive to the essential purpose of the law.'" Jimenez v. Baglieri, 152 N.J. 337, 351, 704 A.2d 1285 (1998) (quoting Wollen v. Borough of Fort Lee, 27 N.J. 408, 418, 142 A.2d 881 (1958)). Ultimately, statutes "are to be read with a modicum of common sense to insure that the purpose of the Legislature is upheld and preserved." Friends of Dinky Woods v. Township of West Windsor, 291 N.J.Super. 325, 333, 677 A.2d 289 (Law Div.1996). Plaintiffs' interpretation of the statute fails to reflect the Legislature's distinction between an isolated zoning change and a broad-based review of a municipality's entire zoning scheme.
Amendments to N.J.S.A. 40:55D-89 were a reaction to Levin, supra, 82 N.J. at 181-82, 411 A.2d 704, and recognized the difference between an amendment to a zoning ordinance, as in Levin, or an adoption of a reexamined revised master plan resulting in enabling ordinances to implement such revisions. The difference between the two is best typified by the facts of this case. The former involves compliance with statutory procedures that will *1224 generally be time restricted and may well involve public involvement resulting from the specific notice required by the statutes. On the other hand, the master plan review envisioned by N.J.S.A. 40:55D-89 involves, as is demonstrated here, extensive public review and analysis by consultants and experts, hearings, general public notice, and in most cases, extensive publicity and notoriety. The statute itself provides detailed specifications of the nature of the reexamination and the report which must follow such reexamination.
The reexamination report shall state:
a. The major problems and objectives relating to land development in the municipality at the time of the adoption of the last reexamination report.
b. The extent to which such problems and objectives have been reduced or have increased subsequent to such date.
c. The extent to which there have been significant changes in the assumptions, policies, and objectives forming the basis for the master plan or development regulations as last revised, with particular regard to the density and distribution of population and land uses, housing conditions, circulation, conservation of natural resources, energy conservation, collection, disposition, and recycling of designated recyclable materials, and changes in State, county and municipal policies and objectives.
d. The specific changes recommended for the master plan or development regulations, if any, including underlying objectives, policies and standards, or whether a new plan or regulations should be prepared.
e. The recommendations of the planning board concerning the incorporation of redevelopment plans adopted pursuant to the "Local Redevelopment and Housing Law," P.L.1992, c. 79 (C.40A:12A-1 et al.) into the land use plan element of the municipal master plan, and recommended changes, if any, in the local development regulations necessary to effectuate the redevelopment plans of the municipality.

[N.J.S.A. 40:55D-89.]
Here, the master plan reexamination extended in excess of two years involving more than a score of working meetings and public hearings. General notice was provided to the entire municipality. There was contentious debate on the issues before both the Planning Board and Township Committee. Ultimately, the LUO was adopted by a split vote of the Township Committee. As demonstrated here, the very nature of periodic review of a master plan precluded it from remaining a secretive process and outside of public oversight and scrutiny. Against this not atypical factual backdrop, the Legislature was keenly aware of the distinction between the two separate processes and did not perceive it necessary to require that each property owner affected by a master plan change and zoning change be notified.
There is a more practical consideration. The continuous review process involves "tinkering" and adjusting the master plan and ultimately the proposed LUO. This is a dynamic process which may involve hundreds of changes, some major and some minor, during the deliberative and review process. To require individualized and personal notice to those within two hundred feet each time such change is contemplated or proposed would be counterproductive and would essentially stall the review process. The Legislature recognized that where there was a generalized revision, for which generalized public notice would be given, there was no reason to burden a municipality, and ultimately the taxpayers (the record suggests that the cost of such notice in Lawrence would approach $30,000), with the additional burden of imposing specific notice for each proposed zoning change. Instead, personal notice is reserved for discrete and specific zoning changes that are not part of a *1225 Board's reexamination and modification of classifications consistent with them. See, e.g., Levin, supra.
We see no distinction between the rights afforded under N.J.S.A. 40:55D-62.1 and N.J.S.A. 40:55D-63. In both instances, the Legislature perceived the notice requirements and very nature of a master plan reexamination to be worthy of the exemption. In such circumstances, the extended nature of the process coupled with the general notice provided are more than sufficient to protect the public. We conclude that no personal notice was required, and plaintiffs' claim in that regard must fail.

III.
Plaintiffs argue that the zoning of the developer's property amounted to spot zoning.
"`Spot zoning' is the use of the zoning power to benefit particular private interests rather than the collective interests of the community." Taxpayers Ass'n of Weymouth Township, Inc. v. Weymouth Township, 80 N.J. 6, 18, 364 A.2d 1016 (1976), cert. denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). The burden of proving that a zoning ordinance is illegal spot zoning lies with plaintiffs. Id. at 19, 364 A.2d 1016. Moreover, "[a]n ordinance enacted to advance the general welfare by means of a comprehensive plan is unobjectionable even if the ordinance was initially proposed by private parties and these parties are in fact its ultimate beneficiaries." Id. at 18, 364 A.2d 1016.
Although zoning ordinances enjoy a presumption of validity, a court can invalidate an ordinance if the municipality has not followed the procedural requirements of the statute. Riggs v. Township of Long Beach, 109 N.J. 601, 611, 538 A.2d 808 (1988). "Courts generally will not inquire into legislative motive to impugn a facially valid ordinance, but will consider evidence about the legislative purpose `when the reasonableness of the enactment is not apparent on its face.'" Id. at 613, 538 A.2d 808 (quoting Clary v. Borough of Eatontown, 41 N.J.Super. 47, 71, 124 A.2d 54 (App.Div.1956)). Moreover, if a particular ordinance serves two purposesone lawful and one unlawfula court should not inquire into which purpose the municipality intended the ordinance to serve. Ibid. The presence of a lawful purpose will be sufficient. Ibid.
In granting summary judgment to defendants on the issue of spot zoning, Judge Feinberg stated:
Plaintiffs have failed to carry their burden of establishing that a genuine issue of material fact exists as to their spot zoning claim. They have simply introduced evidence that the developer's 1997 application for subdivision of a parcel within the R-2A District referred to the higher density proposed by the master plan adopted in 1995. They have blatantly failed to provide any evidence that the Township had some interest in awarding this developer a benefit to the detriment of all other land owners in and around this zone.
To the contrary, defendants have offered a more than sufficient amount of evidence supporting the Township's legitimate purpose in enacting the LUO. As discussed above, the LUO was part of defendants' six year reexamination plan. Defendants have produced the statements and certifications of Town Council and Planning Board members who have expressed that the LUO was part of a comprehensive plan to benefit the community by providing residents with a uniform zoning scheme, and that the ordinance was not simply enacted to benefit certain individuals in the Township.
We agree with Judge Feinberg's analysis of this issue and conclude that plaintiffs failed to establish any basis for concluding that defendants were involved in spot zoning; moreover, we find no merit to plaintiffs' argument that further discovery *1226 would generate a factual issue to withstand defendants' motion for summary judgment. The record was complete and sufficient to allow the trial judge to adjudicate the matter.
Finally, we have carefully reviewed the record and find no basis for plaintiffs' argument that the Township Council failed to provide personal notice to non-party property owners who were affected by provisions of the LUO that deviated from the master plan. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] There is a discrepancy between the minutes of the Township Council's November 25, 1997 meeting and the Land Use Ordinance as to the proposed density of the R-2A zone. The minutes indicate that the council agreed on a 30,000 square foot density for the R-2A zone, while the LUO that was adopted designated a 22,500 square foot density for this zone. However, there is no question that the developer sought the 22,500 square foot density that was ultimately adopted for the R-2A zone in the LUO.
[2] In their complaint, plaintiffs also alleged that defendants' acts violated 42 U.S.C.A. § 1983 and constituted a conspiracy under 42 U.S.C.A. § 1985. These counts were apparently not pursued by plaintiffs on summary judgment, and although Judge Feinberg did grant summary judgment on these grounds, plaintiffs explicitly do not appeal from dismissal of these two counts.
[3] N.J.S.A. 40:55D-63, titled "Notice and protest" states in pertinent part:

Notice of the hearing on an amendment to the zoning ordinance proposing a change to the classification or boundaries of a zoning district, exclusive of classification or boundary changes recommended in a periodic general reexamination of the master plan by the planning board pursuant to section 76 of P.L.1975. c. 291 (C. 40:55D-89), shall be given prior to adoption in accordance with the provisions of section 2 of P.L.1995, c. 249 (C. 40:55D-62.1).
[Emphasis added.]