900 A.2d 325 (2006)
386 N.J. Super. 255
RIYA FINNEGAN, LLC, Plaintiffs
v.
TOWNSHIP COUNCIL OF SOUTH BRUNSWICK and the Planning Board of the Township of South Brunswick, Defendants.
Superior Court of New Jersey, Law Division, Middlesex County.
Decided February 21, 2006.
*326 Henry L. Kent-Smith, Princeton, for the plaintiff (Saul Ewing, attorneys).
*327 Anthony M. Campisano, North Brunswick, for defendant Township Council of South Brunswick (Bucca and Campisano, attorneys).
John A. Jorgensen, Iselin, for defendant Planning Board of the Township of South Brunswick (Jorgensen and Barnes, attorneys).
HURLEY, J.S.C.
This is an action in lieu of prerogative writs brought by plaintiff Riya Finnegan, LLC ("plaintiff"), challenging a zoning ordinance passed by the Township of South Brunswick changing the zoning of plaintiff's property from Neighborhood Commercial (C-1) to Office Park (OP). The issue before the court is whether Ordinance 15-05 is unenforceable as it applies to plaintiff's property.
Plaintiff is the owner of certain property located in the Township of South Brunswick at the southeast corner of Route 27 and Finnegans Lane ("property"). The property consists of 12.69 acres and is designated as Block 92, Lot 7.01 on the tax map of the Township of South Brunswick.
Plaintiff filed a preliminary and final site plan application with the South Brunswick Township Planning Board ("Planning Board") on December 12, 2004. The application sought development of a 14,690 square foot pharmacy with a drive thru window; a 29,092 square foot retail building containing 6,800 square feet second story office space; and a separate 9,000 square foot office building. The property was located in the C-1 Commercial/Professional Zone at the time plaintiff filed its application. The municipal boundary of the Township of North Brunswick is at the northeast corner. The municipal boundary of Franklin Township is across Route 27, to the west. The surrounding zones located in the neighboring municipalities include neighborhood commercial and neighborhood business uses. The area bordering the property within South Brunswick contains 300 single-family homes, an elementary school, mixed-use buildings such as general retail commercial, a professional office, and retail and local services.
After having read the transcript of the proceeding before the Planning Board and after having viewed the video tapes of the proceedings before the Township Council, the court conducted a trial on December 23, 2005. At the conclusion of the trial, the court conceded to the request of counsel to allow testimony from both the plaintiff's and defendants' planners. The trial was then continued to January 30 and January 31, 2006.
Craig Marshall, a licensed professional planner, is the planner for South Brunswick Township. He testified that he attended the meetings at which the Planning Board and Township Council considered the rezoning of the subject property. He described the area to the south of the site, along Route 27, as having mixed uses containing "predominantly strip shopping centers" along with "single uses." The Township of North Brunswick lies immediately to the north. He described the area along Route 27 in North Brunswick as containing "strip shopping centers," "mixed commercial" uses, and "some residential." Directly across Route 27, to the west, lies Franklin Township. He described the uses in Franklin Township as containing the "same uses" and "strip shopping." At the hearing before the court, he testified that the uses in North Brunswick, Franklin and South Brunswick along Route 27 are consistent with the permitted uses allowed in South Brunswick's C-1 zone.
The Planning Board adopted its Master Plan in December 2001 after a two-year study of existing land uses and traffic conditions. *328 The Master Plan provides that the C-1 Zone, the Neighborhood Commercial district, is located along the northern section of Route 27, and the C-3 zones, the Highway Commercial districts, are located predominately along Route 1. The Office Professional ("OP") zone is also situated along the Route 1 corridor.
Plaintiff appeared before the Planning Board at a public hearing on January 19, 2005. At this hearing, neighboring residents objected to plaintiff's site plan application and filed an application with the South Brunswick Zoning Board to determine if drugstores are a permitted use in the C-1 zone. The Zoning Board decided that drugstores are allowed within the C-1 zone and that plaintiff would not need to apply for a use variance.
The same residents thereafter petitioned the Township Council on February 2, 2005, to rezone the property from C-1 to OP. The change in zone would block plaintiff's proposed development because the OP zone does not permit retail sales and services, restaurants or packaged goods. Further, the bulk requirements of the two zones vary. The minimum lot area of the OP zone is three acres, while the C-1 zone has a minimum lot area of 10,000 square feet. The setbacks and residential buffers are also different.
On February 8, 2005, the Township Council referred the request of the objecting residents to the Planning Board for recommendation pursuant to N.J.S.A. 40:55D-64. The Planning Board referred the matter to its subcommittee comprised of three Board members to make a recommendation as to the change in zoning. Upon recommendation from the subcommittee and based upon testimony from the residents, the Planning Board issued a memorandum to the Township Council recommending that the property be rezoned from C-1 to OP. N.J.S.A. 40:55D-26. The reasons supporting the recommendation included increased traffic, environmental issues and the need for a less intensive use to protect the residents in Brunswick Acres.
At this point, this court feels compelled to address the Open Public Meetings Act. N.J.S.A. 10:4-6 to -21. Although raised at the trial in this matter, none of the parties felt that there was an issue and therefore there was no joinder.
The Board's subcommittee consists of three members of the Planning Board. The Board consists of nine members. N.J.S.A. 40:55D-23. "No action shall be taken at any meeting without a quorum being present." N.J.S.A. 40:55D-9. A quorum of a nine-member board is five members. "All action shall be taken by a majority vote of the members of the municipal agency present at the meeting." N.J.S.A. 40:55D-9. Therefore the "effective majority," the number of members needed to take action, is three. Any three members present at a meeting to consider the business of the Board would constitute an "effective majority" of the Board. The Board's argument that the subcommittee is "advisory" is without merit. If the subcommittee is "purely advisory," that is, without authority to affect personal rights, then the Open Public Meetings Act would not apply. But rights are affected here by an effective majority of the Board.
Here, the subcommittee met to discuss and consider the change in zoning. It met with the Township's Planner who had input into the discussion. At the hearing before this court, Mr. Marshall testified that he did attend the meeting of the Planning Board's subcommittee and, although he attended the meeting of the full Planning Board, he gave no testimony as to the appropriateness of the change in zoning. If only a quorum were present when the recommendation to change the *329 zoning was adopted, these same three members could control the outcome. It is this court's considered opinion that the Board reconsider its procedure in this regard. But because the plaintiff has not challenged the action, no decision can be made here to affect the outcome of this case.
On February 22, 2005, the Township Council introduced Ordinance 15-05 on first reading to rezone the property from C-1 to OP. On March 8, 2005, the Council met to adopt Ordinance 15-05 on second and final reading. Plaintiff's counsel appeared and objected to the rezoning, but the Council adopted both a resolution in support of Ordinance 15-05, noting the inconsistencies with the Master Plan, and Ordinance 15-05 on second reading. The Council considered testimony of the Township residents and the recommendations of the Planning Board to reach their unanimous decision to rezone the property. The Township's planner made no presentation on the issue to the Council or to the public.
Plaintiff filed a complaint in lieu of prerogative writs on March 29, 2005, arguing (1) Ordinance 15-05 constitutes impermissible inverse spot zoning and is therefore arbitrary, capricious and unreasonable; (2) Ordinance 15-05 is inconsistent with the land use plan element of the Master Plan; and (3) Ordinance 15-05 results in an unconstitutional taking of the property without just compensation.
The plaintiff abandoned its inverse condemnation claim. The questions before the court are whether Ordinance 15-05 is arbitrary and capricious and/or constitutes spot zoning. The governing body may adopt or amend a zoning ordinance, but "any amendment or revision thereto shall either be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements." N.J.S.A. 40:55D-62(a). An inconsistency between a zoning amendment and a master plan does not immediately suggest that the proposed amendment may not be adopted. Willoughby v. Planning Bd. of the Twp. of Deptford (Willoughby I), 326 N.J.Super. 158, 165, 740 A.2d 1097 (App.Div.1999). The "substantially consistent" requirement of the statute allows the governing body to adopt an ordinance that has some inconsistency with the master plan, provided the ordinance does not materially or substantially undermine or distort the master plan. Manalapan Realty v. Twp. Comm. of the Twp. of Manalapan, 140 N.J. 366, 384, 658 A.2d 1230 (1995).
Any inconsistency with the master plan requires the governing body to follow two procedural requirements: (1) a majority vote of the full authorized membership of the governing body and (2) a statement of reasons. Willoughby I, 326 N.J.Super. at 165, 740 A.2d 1097. A governing body must expressly recognize the inconsistency between the zoning amendment and the master plan, and must adopt a resolution at the time it adopts the inconsistent ordinance or amendment, setting forth the reasons for adoption. Willoughby v. The Wolfson Group (Willoughby II), 332 N.J.Super. 223, 753 A.2d 162 (App.Div.2000). Before holding a hearing on the adoption of or amendment to a zoning ordinance, the governing body must refer any proposed ordinance or amendment to the planning board for review. N.J.S.A. 40:55D-64. The planning board must then submit a report to the governing body, within thirty-five days of the referral, identifying any inconsistencies between the proposed ordinance and the master plan, and giving recommendations concerning those inconsistencies. N.J.S.A. 40:55D-26a. If the planning board fails to *330 submit a report within the requisite thirty-five day period, the governing body is not bound by the voting requirements of the statute concerning the planning board's recommendations addressing the inconsistencies.
Plaintiff argues that the Master Plan specifically endorsed the existing C-1 zone located along the northern section of Route 27. It asserts that the 2001 Master Plan did not make any recommendation to change the zoning designation of plaintiff's property from the C-1 zone to the OP zone. Further, the Master Plan did not contain a recommendation to expand the OP zone outside the Route 1 corridor. In response, the Township Council acknowledged that the zoning change was inconsistent with the Master Plan but argues that the resolution passed at the same time as the Ordinance explained how the inconsistencies furthered the public's health, safety and welfare.
The Master Plan's land use element provides that "[m]ost of the land area east of Route 1 consists of single-family residential development at varying densities with supporting neighborhood and general commercial uses along Route 27." The Plan further states that the Route 1 corridor "has been planned for major office development and community and highway commercial uses." This conclusion was drawn as a result of detailed studies.
The Neighborhood Commercial district, or C-1 zone, is located "along the northern section of Route 27 and within the villages of South Brunswick ..." The C-1 zone is "primarily designed for and limited to business uses of a retail and service type and professional offices." The Master Plan provides for two districts within the Office Park (OP) category. The OP districts "reflect the recent intensive studies of the Route 1 corridor and current land use policy enactments." The purpose of the OP districts is to "permit planned office development along the Route 1 corridor, while incorporating design standards for buffers, building orientation, parking area and landscape."
One key reason cited by the Township Council for the change in zoning from C-1 to OP is an increase in traffic. The Master Plan has a circulation plan element that discusses the traffic, roadways and intersections within South Brunswick. The circulation plan element "analyzed existing conditions, conducted traffic counts, and presented a model for determining future traffic impacts from a particular development application." One of the planned roadway improvements contained within this element is the extension of Finnegans Lane between Route 130 and Route 27. This improvement calls for "minor safety improvements and minor widening within the Township" and states that "[v]olume projections do not indicate widening will be required to four lanes at this time." The Plan notes that volume projections will have to be reaffirmed in the future "as the majority of this improvement will occur outside of the Township."
It is undisputed that the amended ordinance is inconsistent with the Master Plan. Plaintiff's property is located at the intersection of Route 27 and Finnegans Lane. It was zoned C-1 after careful study prior to the inclusion of the circulation plan element in the Master Plan. At the time it adopted the Plan, the Planning Board did not find it necessary to recommend a change in the zoning of the property to OP. It relied on the traffic analysis included in the circulation plan element of the Plan. If there had been reason for concern, the Planning Board could have questioned the property's zoning at that time. Further, the Plan does not include any recommendations concerning the expansion *331 of the OP zone past the Route 1 corridor.
Allegations of arbitrary, capricious, or unreasonable conduct by the Township Council compel this court to analyze the basis under which the change was made. The Council properly directed the matter to the Planning Board for review and comment. The Planning Board forwarded a resolution recommending the zone change in spite of its inconsistency with the Master Plan. The governing body then adopted a resolution stating the reasons for the adoption contrary to the land use element of the Master Plan and thereafter adopted the ordinance.
Procedurally, the actions of the Planning Board and the Township Council were consistent with the provisions of the MLUL. However, this court finds that the substantive basis under which the ordinance was adopted was arbitrary and unreasonable. Arbitrary and unreasonable conduct can be concluded from a lack of support for its decision in the record.
The Township Council adopted its resolution on March 8, 2005. The Council found the following:
 "[t]he rezoning of this property from C-1 to OP will serve to prevent an intensification of traffic congestion at the intersection..."
 "increased traffic from the site if it is developed as a commercial facility that is permitted by the C-1 zone will significantly impact the flow of cars and trucks through Brunswick Acres residential development ..".
 "office use tends to generate less traffic than commercial[.]"
The foregoing are traffic-related considerations. The only traffic testimony presented was from the adjoining residents. There was no such expert testimony provided in support of the Council's conclusion. Likewise, there was no expert testimony provided in support of the ordinance change before the Planning Board. Although Mr. Marshall testified that he was present during a meeting held by the Board's subcommittee, he admitted that he has no traffic expertise. In fact, all traffic reports submitted in support of applications before the Planning Board are addressed by the Township Engineer, not the Township Planner. The Township Engineer did not testify at any public hearing before either the Planning Board or the Township Council. The only testimony was lay testimony from the adjoining residents.
Mr. Marshall also testified at the hearing held before this court that plaintiff, while prosecuting its application, presented expert testimony before the Planning Board which included a traffic study. Plaintiff's traffic engineer performed an analysis of existing conditions and those which would exist if the application were approved. The results are essentially the same; no change. Neither the Planning Board nor the Council considered the plaintiff's traffic study.
The Council's resolution included the following additional findings:
 "[T]here are sufficient commercial establishments to serve the needs of the area."
 "[T]he development of a shopping center... as permitted in the C-1 zone, would be too intense for this 12.69 acre parcel, which is not compatible to the residential properties immediately adjacent to it."
 "[T]here is a minimal amount of nuisance from professional offices such as noise, light and odors."
 "[O]ffices often serve as a transition use between commercial and residential because of its intermediate intensity between a more intense use (in this case Route 27) and a less intensive *332 use (in this case Brunswick Acres residential neighborhood)."
 "[I]t is more in keeping with the general comprehensive plan of this area of the Township as a transition area from intense use to residential use."
 "[T]he significant development of the Route 27 corridor over the last seven years has made it ideal for application of the OP standards so as to protect the health, safety and welfare of the community from over development of uses that are too intense for that area of the Township."
The foregoing reasons are grounded upon planning concepts. Again, no professional planner testified before the Planning Board or the Township Council to support these conclusions. There was no testimony in regard to the need or lack thereof of retail outlets. The fact that such exist in the area does not support the conclusion that such are not needed. The Council's conclusion ignores the fact that the plaintiff has applied just for such a use. It does not follow that the plaintiff would apply for a development for which there is no need.
Nor is there proof that the proposed use would be "too intense." The Master Plan contemplates such a use. The adjoining residential area, Brunswick Acres, was developed in the 1960's. The Township Master Plan underwent a comprehensive analysis and was adopted in 2001. The use permitted by the Master Plan had to take into account Brunswick Acres, the existing residential use. Therefore, the Township Council, when adopting ordinances consistent with the Master Plan, found that the proposed use was compatible with the adjoining use. There is no support in the record to change that conclusion.
The Township Council concluded that there is a minimal amount of nuisance created from offices compared to retail shopping uses. It specifically referred to noise and light. The Township Planner testified before this court that the Township, as well as the State, has noise regulations that must be applied regardless of the use. He also testified that the Township has lighting standards that must be applied, which are the same for offices and retail stores. There was no testimony related to odors or controls thereof. The Council's conclusion is nowhere supported in the record. No expert testified relative to any of these issues.
The Council's resolution also concludes that an office use serves as a transition to a residential use. Mr. Marshall testified that the purpose of a buffer is to protect a less-intensive use from a more intensive use, yet while the buffer standards in the OP zone require a buffer of 100 feet between uses, in the C-1 zone only 30 feet is required. That does not support a conclusion that the office use is less intense or less onerous.
The court cannot substitute its findings for that of the Board or the Council. But in determining if an action is arbitrary or unreasonable, the Court is required to examine the record for support in the Board's or Council's conclusions. There is no support for the Board's or Council's conclusion other than the testimony of the residents of Brunswick Acres. Such is insufficient. See Cell South of N.J., Inc. v. Zoning Bd. of Adj., W. Windsor, 172 N.J. 75, 88, 796 A.2d 247 (2002).
Therefore this court concludes that the action taken by the Township Council in adopting Ordinance No. 15-05 is arbitrary and unreasonable and is void ab initio.
The court must also address plaintiff's challenge of Ordinance 15-05 as illegal spot zoning. "Spot zoning" is defined as "the use of zoning power to benefit particular private interests rather than the *333 collective interests of the community." Gallo v. Mayor of Lawrence Twp., 328 N.J.Super. 117, 126, 744 A.2d 1219 (App. Div.2000).
A municipality may change its zoning ordinance at any time during the pendency of a site plan application, even if the ordinance "is amended in direct response to a particular application." Manalapan Realty, supra, 140 N.J. 366 at 378-79, 658 A.2d 1230. "[A]n ordinance enacted to advance the general welfare by means of a comprehensive plan is unobjectionable even if the ordinance was initially proposed by private parties and these parties are in fact its ultimate beneficiaries." Gallo, supra, 328 N.J.Super. at 127, 744 A.2d 1219. Thus, not every action taken by a municipality in response to a site plan application is illegal spot zoning, even if triggered by the objections of residents. The key phrase here is "comprehensive plan." The test of whether a municipality has taken action constituting spot zoning is "whether the zoning change in question is made with the purpose or effect of establishing or furthering a comprehensive zoning scheme calculated to achieve the statutory objectives" or whether it is "designed merely to relieve the lot of the burden of the restriction of the general regulation by reason of conditions alleged to cause such regulation to bear with particular harshness upon it." Cresskill v. Dumont, 15 N.J. 238, 249, 104 A.2d 441 (1954) (citing Conlon v. Bd. of Pub. Works of Paterson, 11 N.J. 363, 366, 94 A.2d 660 (1953)).
Inverse spot zoning is defined as "a land-use decision which arbitrarily singles out a particular parcel for different, less favorable treatment than the neighboring ones." Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 132, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); see also Petlin Assoc., Inc. v. Township of Dover, 64 N.J. 327, 331, 316 A.2d 1 (1974). The New Jersey Supreme Court addressed the issue of inverse spot zoning in Petlin. The Township of Dover changed the zoning of the plaintiff's property to a hospital medical service zone after the plaintiff had filed his site plan application. The application contained permitted commercial uses at the time of filing. Petlin, supra, 64 N.J. at 329-30, 316 A.2d 1.
The Supreme Court agreed with the trial court's findings and conclusions that the changes in zoning amounted to inverse spot zoning. Id. at 331, 316 A.2d 1. The trial court had found that the township had ignored the recommendations of its planning expert and "had capitulated to protestors rather than adhere to principles of sound zoning." Ibid. The Petlin court agreed that "the zoning changes affecting the property in question were not in furtherance of sound comprehensive zoning," and that plaintiff's acquisition of Lots 17 and 18 and application for development precipitated the changes in zoning. Ibid. The Court further stated, "[t]he record demonstrates that no real consideration was given to how the property would fit into an integrated and comprehensive zone plan, but rather that the various enactments were designed to affect only the use of plaintiff's property." Ibid.
In the present case, plaintiff filed a site plan application on December 12, 2004, when the property was zoned C-1. It appeared before the Planning Board on January 19, 2005, at which time the neighborhood residents objected to the application. In response to a question posed by objecting residents, the Zoning Board determined that drugstores were a permitted use within the C-1 zone. The residents then petitioned the Township Council on February 2, 2005 for a change in zoning of the Property from C-1 to OP. The Council referred the proposed ordinance to the Planning Board on February 8, 2005, and, *334 upon recommendation from the Planning Board, passed Ordinance 15-05 rezoning the Property from C-1 to OP. The entire procedure, from referral to the Planning Board to adoption of the ordinance, took less than thirty days.
This court holds that the change in zoning of plaintiff's property amounts to inverse spot zoning. Neither the Township Council nor the Planning Board offered any evidence other than lay evidence presented by objecting residents that the zone change furthered the comprehensive plan of the Township. The Master Plan did not make any recommendations regarding the change in zoning of plaintiff's property, but rather contained detailed studies supporting the conclusion that the property should be zoned C-1. The municipality presented nothing to challenge the previous findings contained in the Master Plan.
The MLUL sets forth the purposes of zoning. Among them are:
 To encourage municipal action to guide to appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals and general welfare; and
 [t]o ensure that the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities, the county and the State as a whole.
[N.J.S.A. 40:55D-2.]
The property is located on the border with North Brunswick, Middlesex County, and Franklin Township, Somerset County. The Township Planner testified before this court that the properties adjoining the subject property to the north are all existing and permitted uses consistent with the C-1 uses permitted in South Brunswick. The same is true for the uses existing and permitted in Franklin Township. The adoption of Ordinance No. 15-05 created the OP zone, which is inconsistent with the zoning of adjoining municipalities.
The record in this case also illustrates that Ordinance 15-05 was enacted to affect only the use of plaintiff's property. The objecting residents proposed the zoning change. The Township Council had no reason to visit rezoning of the property prior to the objections. At the February 16, 2005, meeting of the Planning Board, the Mayor, as a member of the Planning Board, approached the subject of spot zoning and acknowledged that changing the zoning of plaintiff's property left the municipality open to a lawsuit. The new OP zone only affects plaintiff's property in this case. Because the municipality does not support its decision to rezone contrary to its Master Plan or any other data supporting its reasons, its decision constitutes inverse spot zoning.
For the foregoing reasons, it is
ORDERED and ADJUDGED on this 21st day of February, 2006, that Ordinance 15-05 is deemed invalid and unenforceable ab initio; it is further
ORDERED that this matter be and is hereby remanded to the Planning Board to consider the plaintiff's application consistent with this decision and within the time provided by N.J.S.A. 40:55D-46. The time provisions of the MLUL will be deemed to have commenced on the date plaintiff's application was deemed complete, but shall be stayed from the date on which the Ordinance 15-05 was deemed effective to the date of this judgment.