926 A.2d 402 (2007)
394 N.J. Super. 303
RIYA FINNEGAN, LLC, Plaintiff-Respondent,
v.
TOWNSHIP COUNCIL OF SOUTH BRUNSWICK, Defendant-Appellant, and
The Planning Board of the Township of South Brunswick, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 2007.
Decided July 3, 2007.
*403 Anthony M. Campisano, North Brunswick, argued the cause for appellant (Bucca & Campisano, attorneys; Mr. Campisano, on the brief).
Henry L. Kent-Smith, Princeton, argued the cause for respondent (Saul Ewing, attorneys; Mr. Kent-Smith, of counsel and on the brief; Jennifer Forrest, on the brief).
Before Judges CUFF, WINKELSTEIN and FUENTES.
The opinion of the court was delivered by
*404 FUENTES, J.A.D.
Defendant, Township Council of South Brunswick, appeals from the decision of the Law Division invalidating municipal Ordinance 15-05, which rezoned plaintiff Riya Finnegan's property from a commercial development district to an office development district. The trial court held that the municipal legislation was arbitrary and capricious, because the Township Council did not have the benefit of expert testimony to support the expressed substantive basis for enacting the ordinance. The court also concluded that the ordinance constituted inverse spot zoning. Finnegan v. Twp. Council of S. Brunswick, 386 N.J.Super. 255, 268, 270, 900 A.2d 325 (Law Div.2006).
After a careful review of the record, and in light of prevailing legal standards, we reverse. We hold that the trial court applied an incorrect standard of review in determining the validity of the municipal ordinance in question. In adopting this rezoning ordinance, the Township Council was performing a legislative function. As such, the Township Council was entitled to rely on the views expressed by the Township residents as a basis for enacting municipal legislation. We also hold that the ordinance does not constitute spot zoning, because the legislation's principal purpose furthered a comprehensive zoning scheme, and was not designed merely to relieve a lot or lots from the burden of a general regulation. We will examine and discuss these issues in the following factual context.

I

A
Plaintiff is the owner of 12.69 acres of property in South Brunswick, identified as Block 92, Lot 7.01. The property is located at the northwest corner of the Township, at the intersection of Route 27 and Finnegans Lane.
In December 2001, the Township Council adopted a Master Plan ("Plan") for the land use and development of South Brunswick. The Plan was the result of a two-year study, which included numerous meetings of various committees, boards, and commissions. It included a detailed traffic analysis by the Alaimo Group, an engineering consultant firm.
In the Plan, plaintiff's property was zoned as a C-1 district for "neighborhood commercial land use." The Plan defined C-1 districts as follows:
The Neighborhood Commercial districts referred to as C-1 are located along the northern section of Route 27 and within the villages of South Brunswick, along Ridge Road in Monmouth Junction and along Georges Road in four locations: at the intersection of Deans Rhode Hall Road in Deans, adjacent to R-2, RM-4 and AH uses, at the intersection of Route 522 and at the intersection of Monmouth Junction Road in Dayton. The minimum lot size for this area is 10,000 square feet and is primarily designed for and limited to business uses of a retail and service type and professional offices. Restaurants and package goods are conditional uses, provided they do not directly abut a residential district. This district also permits mixed uses with businesses on the first floor and second story residences reflective of the village character. Most of the districts are developed.
On December 12, 2003, plaintiff filed a site plan application with the municipal planning board "for the development of a 14,690 square foot pharmacy with drive thru window, a 29,092 square foot retail building with 6,800 square feet second story office and a 9,000 square foot office building on the [p]roperty." At a meeting *405 of the Township Council held approximately two months later, a group of area residents strongly urged the Township Council to rezone plaintiff's property to allow only office development, as opposed to commercial development. The residents' main concerns centered on overdevelopment, increased traffic in the area, and other like nuisances.
In particular, a resident named Alan Zublatt, who claimed to represent a large number of residents from the neighborhood in which plaintiff's property was located, discussed the results of a land-use analysis conducted in a three and one-quarter mile stretch of road near plaintiff's property:
Did you know that there are 106 commercial establishments consisting of both retail sales and retail service uses? Offices, churches, and governmental building types were not included in this survey. These uses that are there now include 29 food establishments, seven dry cleaners, five beauty salons, five service stations, excluding repair, five drug stores, including a pharmacy in Stop and Shop, four florists, . . . five banks and three supermarkets.
Zublatt also argued that the existing traffic problem would worsen with intensive commercial development because of shoppers and tractor-trailers making deliveries. He proposed a zoning change that would only allow the development of professional offices:
We believe professional offices are more compatible to the residential uses for the following reasons. A, there's a lack of nuisance element such as noise, light, and odors the shopping centers would have. B, retailers are open in the evening and on weekends, while offices, professional offices typically, although they could be, are not. It is the weekend that families in Brunswick Acres seek to use and enjoy their backyards without impact from retail use and activity. Walgreen's on Route 27 is open 24 hours a day. C, in many cases office serves as a good transition between commercial and residential. . . . D, certain types of commercial [ ] can become congregation points or hang outs, and I don't think people hang out, usually, at professional offices, if history is any teacher. E, offices generate traffic from the journey to work and journey from work hours, while retail traffic is continuous during the day and heavy on Saturday, adding to the existing heavy traffic flows and existing [traffic] stacking problems in the area. . . . And finally, the [aesthetics] of a well-designed professional office park, with a landscaped front lawn, is certainly superior to a shopping center with a front yard set back paved parking lot.
After the meeting, the Township Council referred the issue to the Planning Board, pursuant to N.J.S.A. 40:55D-64. On February 16, the Planning Board held a meeting at which area residents again argued for rezoning. The Planning Board voted unanimously to recommend rezoning plaintiff's property to OP, and issued a report stating their recommendation to the Township Council. In the Plan, OP is defined as an Office Professional district, with the following zoning objective:
The purpose of this district is to permit planned office development along the Route 1 corridor, while incorporating design standards for buffers, building orientation, parking area and landscape. Some of the permitted uses include professional and medical offices, banks, health clubs, fitness centers and dance studios, travel agencies, conference centers, nursing homes, extended-stay facilities, child care, assisted living and laboratory or research facilities. The *406 minimum lot area for this district is 3 acres. Some of the areas exhibit environmental constraints. Careful site planning will be required to insure aesthetic development respective of site specific characteristics.
At a Planning Board meeting held on March 8, 2005, residents again argued for the rezoning of plaintiff's property. Plaintiff's counsel was present at this meeting, and offered his views in opposition. Plaintiff's attorney argued that the proposed rezoning ordinance was "arbitrary and capricious and unreasonable," and was inappropriately "rushed through" the municipality's legislative process.
After the public comment session on the proposed ordinance concluded, the Township Council voted unanimously to pass Ordinance 15-05, which rezoned plaintiff's property to OP. Contemporaneous with the passage of the ordinance, the Township Council adopted a resolution in support thereof, expressing the policy underpinnings of the legislation. In this resolution, the Township Council expressed its agreement with the concerns raised by the area residents. The ordinance was therefore intended to respond to these concerns by rezoning the area, thus preventing traffic congestion and other nuisances that often accompany retail development. Although the Township Council acknowledged that the rezoning was inconsistent with the Plan, it concluded that "such a rezoning will advance the general welfare of the Township because nit is more in keeping with the general comprehensive plan of this area of the Township as a transition area from intense use to residential use."

B
On March 29, 2005, plaintiff filed a complaint in lieu of prerogative writs, arguing that the rezoning (1) was inconsistent with the Master Plan; (2) constituted spot zoning; (3) was arbitrary, capricious, and unreasonable; and (4) constituted inverse condemnation. At trial, plaintiffs presented the expert testimony of Paul Phillips, a professional planner. Phillips testified that he believed the rezoning was inconsistent with the Plan, and that it was inconsistent with the development of the surrounding properties. Specifically, the land adjacent to plaintiff's property (located in North Brunswick), and the property across Route 27 from plaintiff's property (located in Franklin Township), were both zoned for commercial development. Phillip thus opined that, if OP zoning was applied to plaintiff's property, a majority of the property would be unusable because of the restrictions of OP zoning, and because a significant portion of the property consisted of wetlands.
Phillips admitted, however, that an office building and parking lot could be developed on the property, consistent with OP zoning standards. He further acknowledged that commercial development would likely create more traffic in the evenings and on the weekends, and would likely create more truck traffic than office development.
The court also considered the expert testimony of South Brunswick Township planner Craig Marshall. He testified that the rezoning was appropriate because plaintiff's property was much larger than the other areas designated as C-1 districts, and would therefore not serve as a commercial center for a "village" or small neighborhood, as C-1 districts were intended to do. Marshall also emphasized that much of the commercial development around plaintiff's property took place after the creation of the Plan in 2001. Thus, in his opinion, office development would create less traffic, as well as fewer noise, light, and odor nuisances.
*407 In the course of his testimony, Marshall acknowledged that the municipality already had noise and light restrictions that applied equally to both office and commercial zones. Finally, although not a traffic expert, Marshall testified that he had sufficient knowledge of the area as the Township's planner to offer a competent opinion on the subject.

C
The trial court memorialized its decision to invalidate the rezoning ordinance in a published opinion. Specifically, the trial court held that the ordinance was arbitrary and capricious, because the Township Council did not have the benefit of expert testimony. Finnegan, supra, 386 N.J.Super. at 266-67, 900 A.2d 325. The court also held that Township Council's actions constituted inverse spot zoning because the decision was not supported by expert testimony; the area surrounding plaintiff's property is all zoned for commercial development; and the rezoning only affects plaintiff's property. Id. at 270-272, 900 A.2d 325. Thereafter, the court remanded plaintiff's application to the Planning Board.

II
Zoning ordinances are presumed to be valid, unless an opponent establishes that they are "`clearly arbitrary, capricious, or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute.'" Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 380, 658 A.2d 1230 (1995) (quoting Bow & Arrow Manor, Inc. v. Town of W. Orange, 63 N.J. 335, 343, 307 A.2d 563 (1973)). Accordingly, "[b]ecause the enactment of, or amendment to, a zoning ordinance is a legislative act, the Township's governing body is permitted to enact an amendment in response to objections to a proposed use of land as long as the amendment is consistent with the Municipal Land Use Law." Id. at 379, 658 A.2d 1230.
The ordinance must satisfy at least one of the fifteen general purposes enumerated in N.J.S.A. 40:55D-2:
a. To encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare;
b. To secure safety from fire, flood, panic and other natural and man-made disasters;
c. To provide adequate light, air and open space;
d. To ensure that the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities, the county and the State as a whole;
e. To promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment;
f. To encourage the appropriate and efficient expenditure of public funds by the coordination of public development with land use policies;
g. To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens;
h. To encourage the location and design of transportation routes which will promote the free flow of traffic while discouraging location of such facilities *408 and routes which result in congestion or blight;
i. To promote a desirable visual environment through creative development techniques and good civic design and arrangement;
j. To promote the conservation of historic sites and districts, open space, energy resources and valuable natural resources in the State and to prevent urban sprawl and degradation of the environment through improper use of land;
k. To encourage planned unit developments which incorporate the best features of design and relate the type, design and layout of residential, commercial, industrial and recreational development to the particular site;
l. To encourage senior citizen community housing construction;
m. To encourage coordination of the various public and private procedures and activities shaping land development with a view of lessening the cost of such development and to the more efficient use of land;
n. To promote utilization of renewable energy resources; and
o. To promote the maximum practicable recovery and recycling of recyclable materials from municipal solid waste through the use of planning practices designed to incorporate the State Recycling Plan goals and to complement municipal recycling programs.
Although municipalities should generally limit zoning ordinances to those consistent with the Master Plan, it may adopt an ordinance inconsistent therewith, provided the municipal governing body approves it "by affirmative vote of a majority of the full authorized membership . . . with the reasons . . . for so acting set forth in a resolution and recorded in its minutes when adopting such a zoning ordinance. . . ." N.J.S.A. 40:55D-62a; see Willoughby v. Planning Bd. of Deptford, 326 N.J.Super. 158, 165, 740 A.2d 1097 (App. Div.1999), certif. denied, 165 N.J. 603, 762 A.2d 218 (2000).
With these principles as our guide, we start our analysis by noting that, in adopting the zoning ordinance at issue, the Township Council adhered to the procedures set forth in N.J.S.A. 40:55D-62a. The Township Council acknowledged the ordinance's inconsistency with the municipal Master Plan; and thereafter unanimously set forth its reasons for adopting the ordinance in a contemporaneous resolution.
In its resolution, the Township Council declared that the purpose of the ordinance was to protect the health, safety, and welfare of the Township's residents and motorists. N.J.S.A. 40:55D-2(a). Citing Cell South of New Jersey, Inc. v. Zoning Board of Adjustment of West Windsor, 172 N.J. 75, 796 A.2d 247 (2002), the trial court rejected this finding, holding that it is insufficient, as a matter of law, for a municipality to support these conclusions by relying only on the testimony of Township residents. Finnegan, supra, 386 N.J.Super. at 266-68, 900 A.2d 325. The court's reliance on Cell South is misplaced.
In Cell South, Comcast Communications, Inc., sought a variance from the Zoning Board of Adjustment of West Windsor in order to increase the size of its wireless communication tower by approximately seventy feet. Cell South, supra, 172 N.J. at 78, 796 A.2d 247. In support of Comcast's application, several communications experts testified that a taller tower was necessary for improved wireless communication coverage. Ibid.
In addition, two professional planners testified that a taller tower would not have any adverse effects on the environment or *409 the aesthetics of the area, and, because Comcast was going to allow Sprint to place a wireless antenna on the tower, it prevented Sprint from erecting its own tower. Id. at 78-79, 796 A.2d 247. Perhaps more importantly, a taller tower would also improve 9-1-1 emergency services in the area. Id. at 79, 796 A.2d 247. West Windsor's planning consultant also testified that the new tower would not have adverse effects on the town, and would, if anything, benefit its residents. Id. at 79-80, 796 A.2d 247.
Area residents objected to Comcast's plans, complaining that the tower would have a "negative visual impact," and would adversely affect their property value. Id. at 80, 796 A.2d 247. Ultimately, the Zoning Board denied Comcast's application, concluding that Comcast did not sufficiently prove that the existing wireless service in the area was inadequate, or that it could not be improved through other alternatives. Ibid.
The Supreme Court held that the Zoning Board impermissibly denied Comcast a variance because Comcast satisfied the specific requirements for a variance request. Id. at 86-87, 796 A.2d 247. These requirements include, showing that the site was particularly suited for the use requested, and that the variance would not cause substantial detriment to the public good. Id. at 82, 796 A.2d 247; see N.J.S.A. 40:55D-70d. The Court held that the Zoning Board erred "[b]y affording undue weight to the residents' unsubstantiated testimony," and by disregarding the substantial evidence offered by Comcast in support of the variance. Cell South, supra, 172 N.J. at 88, 796 A.2d 247.
Here, in adopting the rezoning ordinance in question, the Township Council was performing a purely legislative function. In this context, the Township Council is entitled, as a duly elected policy-making body, to rely on the sentiments of its constituency to formulate municipal policy, including zoning regulations. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 272 N.J.Super. 1, 12, 639 A.2d 318 (App.Div.1994), aff'd, 140 N.J. 366, 658 A.2d 1230 (1995). By contrast, in determining whether to grant Comcast's application for a variance in Cell South, the Board of Adjustment was performing a quasi-judicial, adjudicative function. As such, the Board was obligated to create a record that supported a decision to deviate from established municipal policy.
In evaluating whether a zoning ordinance is arbitrary, capricious, or unreasonable, a reviewing court must determine whether the ordinance is reasonable under the circumstances. Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 290, 777 A.2d 334 (2001), cert. denied, 535 U.S. 1077, 122 S.Ct. 1959, 152 L.Ed.2d 1020 (2002). Stated differently,
"the means selected must have real and substantial relation to the object sought to be attained, and the regulation or proscription must be reasonably calculated to meet the evil and not exceed the public need or substantially affect uses which do not partake of the offensive character of those which cause the problem sought to be ameliorated."
[Ibid. (quoting Kirsch Holding Co. v. Borough of Manasquan, 59 N.J. 241, 251, 281 A.2d 513 (1971)).]
In Pheasant Bridge, the Township of Warren rezoned the plaintiff's land to increase the minimum size for each lot allowed on the land. Id. at 287, 777 A.2d 334. The Township based this decision on the existence of subsurface rock formations that prohibited the construction of adequate septic systems in the smaller lots. Id. at 288, 777 A.2d 334.
*410 The Supreme Court upheld the trial court's ruling that the Township's rezoning was arbitrary, capricious, and unreasonable, because there was clear evidence that the plaintiff's land was not affected by the subsurface rock problem as was the land surrounding him. Id. at 292, 777 A.2d 334. Accordingly, the Supreme Court found that, while the Township had legitimate goals when it passed the ordinance, applying the ordinance to the plaintiff's land had no substantial relation to those goals. Id. at 293-94, 777 A.2d 334.
Here, the trial court's analysis lacked this "substantial relation" focus. Instead, the court's analysis was tainted from the start by the wrong standard of review, leading to an inevitable erroneous outcome.

III
We next address the trial court's decision to invalidate the ordinance because it constituted inverse spot zoning. To determine whether a municipality has engaged in spot zoning, a court must determine whether a "particular provision of the zoning ordinance is made with the purpose or effect of furthering a comprehensive scheme or whether it is designed merely to relieve a lot or lots from the burden of a general regulation." Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 134, 207 A.2d 522 (1965). Inverse spot zoning occurs when the spot zoning only negatively affects a specific piece of land. See Petlin Assocs., Inc. v. Twp. of Dover, 64 N.J. 327, 331, 316 A.2d 1 (1974).
It must be emphasized that a municipality can rezone land while a site plan application for that land is pending. Manalapan Realty, supra, 140 N.J. at 378, 658 A.2d 1230. Rezoning is permitted even if it is done "in direct response to a particular application," as long as the rezoning complies with the Municipal Land Use Law. Id. at 378-79, 658 A.2d 1230. The key to the analysis is determining whether the municipal legislation arbitrarily targets a particular parcel for different, less favorable treatment than the neighboring ones. Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 132, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631, 653 (1978).
In Petlin, the Supreme Court upheld the ruling of the trial court, that the Township of Dover's zoning ordinance constituted inverse spot zoning. Petlin, supra, 64 N.J. at 331, 316 A.2d 1. The Township rezoned a portion of land on the north side of Route 37 that was substantially made up of the plaintiff's property, after plaintiff applied for a building permit to construct a department store on the property. Id. at 330, 316 A.2d 1. The new ordinance zoned the property for "hospital-medical service" only, which restricted the land use to the development of hospitals and medical offices. Ibid. As a result, the plaintiff was prohibited from constructing the department store. Ibid.
Following a plenary hearing, the trial court held, and the Supreme Court agreed, that the municipality did not consider whether the ordinance complied with its comprehensive zoning scheme. Id. at 331, 316 A.2d 1. In addition, the Supreme Court found it significant that the Township blatantly rejected the recommendation of its own town planner, which was to create a medical zone on the south side of Route 37, near Community Memorial Hospital. Ibid.
The Court found that the zoning ordinance was "questionable on its face" because of the town planner's recommendation, coupled with the fact that the State was planning "to make State Highway 37 a four-lane divided road in this area, making the integrated use of both sides of the *411 highway difficult." Ibid. As a result, the Court remanded the case to the Township and gave it "a period of 90 days to rezone the area to a valid and appropriate use." Id. at 333, 316 A.2d 1.
Here, the trial court's holding that Ordinance 15-05 constituted inverse spot zoning was principally based on the Township's reliance on lay opinions to support its conclusion that the zone change furthered the comprehensive plan of the municipality. Finnegan, supra, 386 N.J.Super. at 270, 900 A.2d 325. Once again, the court's reliance on Petlin is misplaced. Although the Supreme Court in Petlin found it significant that the municipality went against the recommendation of its own town planner, the Court did not state that the municipality was required to present expert testimony in support of its findings. Petlin, supra, 64 N.J. at 330-31, 316 A.2d 1. In addition, the Court in Petlin pointed to specific findings in the record that made the municipality's zoning ordinance "questionable on its face." Id. at 331, 316 A.2d 1.
Here, the Township Council's resolution stated several reasons for rezoning plaintiff's property, and explained how such rezoning advanced its comprehensive zoning plan and its goal of protecting the general welfare of the Township's residents. The Township Council acknowledged that the ordinance was inconsistent with the Plan, but explained that it had reconsidered the effect of allowing such intense development on such a large parcel in an area that already contained substantial commercial development. Finally, unlike Petlin in which the municipality acted in contravention of the recommendations of its own planner, South Brunswick's Town planner favored the rezoning.
The trial court also held that OP zoning was inconsistent with the zoning scheme of the surrounding land; some of which is situated in other municipalities. Finnegan, supra, 386 N.J.Super. at 270, 900 A.2d 325. The record does not support this conclusion in its entirety. Although zoning for an OP district on Route 27 is inconsistent with the Plan, the type of development that arises in such a district is not wholly inconsistent with the zoning scheme of the area.
An OP district permits the development of "professional and medical offices, banks, health clubs, fitness centers and dance studios, travel agencies, conference centers, nursing homes, extended-stay facilities, child care, assisted living and laboratory or research facilities." The rezoning simply creates less intense development in an area that already contains significant commercial development, and is directly adjacent to residential areas.
Finally, the trial court held that the ordinance constituted inverse spot zoning because it affected only the use of plaintiff's property. Finnegan, supra, 386 N.J.Super. at 270-71, 900 A.2d 325. Under the circumstances presented here, the ordinance's limited affect is not dispositive.
Plaintiff's property comprises nearly thirteen acres of land, a large tract compared to the other parcels in the area, as can be seen on a land use map of the area. South Brunswick's town planner testified that the policy behind C-1 zoning was to create commercial centers for "villages," and that the average lot size of a C-1 district is ten- to fifteen-thousand square feet.
Thus, plaintiff's property is much larger than other C-1 districts and, under C-1 zoning, could be developed into a large shopping center, as opposed to a smaller commercial center designed to serve a residential neighborhood. The trial court's failure to consider the size of plaintiff's property in its analysis, renders its ultimate *412 conclusion insupportable as a matter of law. By creating an OP district, which only allows for less intense development, the Township Council acted consistently with its general zoning scheme. Reversed.