962 A.2d 484

RIYA FINNEGAN LLC, A NEW JERSEY LIMITED LIABILITY
COMPANY, PLAINTIFF–APPELLANT, v. TOWNSHIP COUNCIL
OF THE TOWNSHIP OF SOUTH BRUNSWICK, DEFENDANT–
RESPONDENT, AND THE SOUTH BRUNSWICK TOWNSHIP
PLANNING BOARD, DEFENDANT.

Argued September 22, 2008—Decided December 22, 2008.

186

*Henry L. Kent–Smith* argued the cause for appellant (*Buchanan, Ingersoll & Rooney,* attorneys; *Mr. Kent–Smith* and *Christine M. Pickel,* on the briefs).

*Anthony M. Campisano* argued the cause for respondent (*Bucca & Campisano,* attorneys).

*Edward J. Trawinski* argued the cause for amicus curiae New Jersey Planning Officials (*Schenck, Price, Smith & King,* attorneys; *Kurt G. Senesky* and *Douglas S. Brierley,* on the brief).

Justice HOENS delivered the opinion of the Court.

This appeal involves two inter-related zoning questions. First, we consider the standards against which courts may test the sufficiency of the reasons given by a municipality for rezoning a parcel from a previously-designated zone that is consistent with the existing Master Plan to a zone that is not. Second, we consider whether, and under what circumstances, the decision of a municipality to rezone a single parcel in a manner inconsistent with the Master Plan constitutes impermissible inverse spot zoning.

Because we conclude that the ordinance adopted by the municipality's governing body, as explained in its supporting resolution setting forth that body's reasons for changing the zoning applicable to this particular piece of land, was arbitrary and capricious, and because under the circumstances, the rezoning of this specific parcel constituted inverse spot zoning, we reverse the judgment of the Appellate Division and reinstate the judgment of the Law Division.

I.

Plaintiff Riya Finnegan LLC owns a sizeable parcel of undeveloped land in South Brunswick, where Route 27 borders both Franklin Township and North Brunswick. In 2001, following a two-year period during which South Brunswick studied land uses and traffic, the municipality adopted its Master Plan. In accor-

dance with the Land Use Element of that Master Plan, plaintiff's parcel, and much of the other land along Route 27, was included in the C-1, or Neighborhood Commercial, Zone. At the time, most of the parcels included in the C-1 Zone were already developed, and the Master Plan described this zone as being devoted to retail service businesses and professional offices, including multi-story mixed-use development. In accordance with the Municipal Land Use Ordinance, "[t]he intent of the C-1 neighborhood commercial/professional office/local services district is to permit the delivery of low-traffic-generating retail and professional services which directly benefit the residents of the surrounding neighborhood." *South Brunswick Township Code* § 62–1146.

In 2003, plaintiff filed a site plan application, seeking to develop its parcel by constructing one professional and two retail buildings, one of which was to be a drugstore. The application fully complied with the requirements of the C-1 Zone, but neighboring residents objected, contending that retail pharmacies were not a permitted use. After a preliminary consideration, both the Planning Board and the Zoning Board rejected that challenge and concluded that a drugstore was a permitted use in the C-1 Zone.

In a continued effort to stop plaintiff from proceeding, the neighboring residents appeared before the Township Council and asked that plaintiff's parcel be rezoned. They pointed out that the surrounding area along Route 27 that was included in the C-1 Zone was already largely developed. They argued that if plaintiff were also permitted to develop its land as allowed by the C-1 Zone, there would be additional traffic, noise, odor, dust, and pollution. Instead of permitting plaintiff to do so, they wanted its land to be rezoned to Office Professional (OP).

The OP Zone, like the C-1 Zone, was a previously-existing zone, included in the 2001 Master Plan. According to the Municipal Land Use Ordinance, "[t]he intent of the OP office park district is to permit planned office zoning for portions of the U.S. Route 1 corridor and to define new design standards for buffers, building orientation, and solid waste/recycling containers in all office and

commercial zones." *Id.* § 62–1266. The matter was referred to the Planning Board for its input and, following a public hearing during which representatives of the neighboring property owners spoke in support of the measure, that body recommended that the Township Council rezone plaintiff's property.

On March 8, 2005, after hearing from the neighboring property owners and from plaintiff's representative, the Township Council adopted Ordinance 15–05, through which it rezoned plaintiff's parcel from the C–1 Zone to the OP Zone. The accompanying resolution explaining its reasons recognized that the decision to rezone this parcel "would be inconsistent with the Master Plan," but stated that "it will significantly protect the health, safety and welfare of the residents and motorists in the area." More particularly, the governing body explained that it decided to rezone this property to "prevent an intensification of traffic congestion at the intersection," and that "increased traffic from the site if it is developed as a commercial facility that is permitted by the C–1 zone will significantly impact the flow of cars and trucks through the Brunswick Acres residential development and past the Brunswick Acres elementary school and park." In addition, the Council pointed to existing parcels in the area that had already been developed in accordance with uses permitted in the C–1 Zone, resulting in a large number of retail and similar commercial establishments.

Finally, the resolution reasoned that rezoning this property to the OP Zone would be appropriate because:

there is a minimal amount of nuisance from professional offices such as noise, lights and odors; offices are typically not open on weekends, when families in residential areas tend to use and enjoy their yards; offices often serve as a transition use between commercial and residential because of its intermediate intensity between a more intense use (in this case Route 27) and a less intense use (in this case Brunswick Acres residential neighborhood); office use tends to generate less traffic than commercial since commercial can be open 24 hours a day while offices are generally closed nights and weekends.

Plaintiff filed its complaint in lieu of prerogative writs, asserting that Ordinance 15–05 was inconsistent with the Master Plan, was arbitrary and capricious, and constituted impermissible inverse

spot zoning. Following a hearing during which professional planners testified on behalf of plaintiff and the Township, the Law Division judge issued a published decision granting plaintiff the relief requested. *See Riya Finnegan, LLC v. Twp. Council of S. Brunswick (Riya I)*, 386 *N.J.Super.* 255, 900 *A.*2d 325 (Law Div.2006).

In summary, the trial court concluded that although the Township had complied with the technical requirements of the applicable provision of the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–62(a), *see Riya I, supra*, 386 *N.J.Super.* at 265, 900 *A.*2d 325, because the governing body had based its decision solely on the assertions of the neighboring property owners, and because those complaints were not supported in the record, its decision was arbitrary and capricious. *Id.* at 267–68, 900 *A.*2d 325. In the alternative, the trial court concluded that because the Township had rezoned only plaintiff's parcel, and because there was no evidence in the record that the zoning change would further the comprehensive zoning plan in the Township, the change constituted impermissible inverse spot zoning. *Id.* at 268–71, 900 *A.*2d 325. The trial court therefore declared Ordinance 15–05 invalid and remanded the matter to the Planning Board for its consideration of plaintiff's site plan application. *Id.* at 271, 900 *A.*2d 325.

Defendant appealed and the Appellate Division, in a published opinion, reversed the judgment of the trial court and reinstated Ordinance 15–05. *Riya Finnegan, LLC v. Twp. Council of S. Brunswick (Riya II)*, 394 *N.J.Super.* 303, 926 *A.*2d 402 (App.Div. 2007). The Appellate Division applied a different standard of review, reasoning that because the Township Council was acting in a legislative rather than quasi-judicial capacity, its reliance on the objections of the neighboring residents alone was permitted. In addition, the appellate panel concluded that the Ordinance adequately complied with the MLUL, *see N.J.S.A.* 40:55D–62(a), by setting forth the reasons for the governing body's decision to rezone the parcel in a manner that was inconsistent with the Master Plan. *Id.* at 313, 926 *A.*2d 402. Moreover, the Appellate

Division also rejected the trial court's conclusion that Ordinance 15–05 constituted inverse spot zoning, distinguishing as inapposite the authorities on which the trial court had relied, *id.* at 317, 926 *A.*2d 402, and finding that because the parcel was larger than the other parcels in the C–1 Zone, the reasons given in the resolution justified singling it out for rezoning. *Id.* at 318–19, 926 *A.*2d 402.

We granted plaintiff's petition for certification, 192 *N.J.* 599, 934 *A.*2d 641 (2007), and granted leave to the New Jersey Planning Officials to appear as amicus curiae.

## II.

In light of the fact that there are already two published opinions addressing the issues raised in this matter, our discussion need not be extended. Indeed, we are largely in accord with the reasoning expressed by the trial court. Nevertheless, we cannot adopt that opinion entirely, in light of the significant matters addressed in the appellate panel's analysis. Instead, we now reverse the judgment of the Appellate Division and we reinstate the judgment of the trial court, with its invalidation of Ordinance 15–05 and its remand to the Planning Board for consideration of plaintiff's site plan application, and we add only the following observations.

## A.

The MLUL grants the governing body of each municipality the power to "adopt or amend a zoning ordinance." *N.J.S.A.* 40:55D–62(a). We have recognized that the role of courts in evaluating such enactments is "circumscribed" so as to "effectuate[ ] that broad ... power." *Pheasant Bridge Corp. v. Twp. of Warren*, 169 *N.J.* 282, 289, 777 *A.*2d 334 (2001). Nevertheless, the power to zone cannot be wielded arbitrarily. The MLUL itself provides that a zoning ordinance

shall be adopted after the planning board has adopted the land use plan element and the housing plan element of a master plan, and all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantial-

ly consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements.

[*N.J.S.A.* 40:55D-62(a).]

Although the Master Plan itself has no independent force, the requirement that the zoning ordinance be "substantially consistent" with it connotes a recognition by our Legislature of the importance of comprehensive planning. As we have commented, that language "permits some inconsistency, provided it does not substantially or materially undermine or distort the basic provisions and objectives of the Master Plan." *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 384, 658 *A.*2d 1230 (1995). At the same time, the MLUL permits the governing body to adopt a zoning ordinance or an amendment to the zoning ordinance that is inconsistent with the Master Plan, but "only by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes." *N.J.S.A.* 40:55D-62(a). Taken together, the statutory directive that the zoning ordinance be "substantially consistent" with the Master Plan and the separate directive that the governing body explain its reasons for adopting an inconsistent ordinance preclude the governing body from making its decision arbitrarily.

There is no doubt in this record that the municipality complied with the technical requirements of the MLUL by referring the matter to the planning board for its review and by including in the resolution that accompanied Ordinance 15-05 a series of reasons that the governing body found sufficient to explain its decision to rezone this parcel. In the view of the appellate panel, courts should look no further, deferring to that legislative body's authority to act on a request, like this one, from some of its citizens. *See Riya II, supra,* 394 *N.J.Super.* at 313, 926 *A.*2d 402. Adopting that approach, however, would require us to step aside even if a municipality responds to what may be baseless demands of some of its citizens and, potentially, to abandon our role in protecting the rights of the few when the

voices of the many speak more loudly. *See Lewis v. Harris,* 188 *N.J.* 415, 441, 908 *A.*2d 196 (2006).

▉ It is entirely appropriate for a governing body to hear testimony from its citizens and to respond. Indeed, it may be that the testimony offered by those citizens, without expert analysis, will be sufficient. But that testimony must be grounded in facts and must be analyzed in light of a comprehensive plan, such as is expressed in the Master Plan. Complying with the formalities of the statute alone will not shield a decision that lacks such a basis. At a minimum, the statutory language of the MLUL makes clear that the owner of rezoned property has the right to challenge the adequacy of the reasons expressed by the governing body for zoning it in a manner inconsistent with the Master Plan.

That being the case, we note that the reasons expressed by the governing body for its decision to rezone this parcel fall short. The Township's reference to traffic concerns is illustrative. Although we do not share the trial court's view that the Township's failure to consult its professional planner or to take testimony from experts about traffic concerns made the ordinance inadequate on its face, *see Riya I, supra,* 386 *N.J.Super.* at 265–67, 900 *A.*2d 325, the failure to point to any support for the concerns expressed by the neighboring residents makes it inadequate.

First, one can always argue that development brings more traffic and that a commercial establishment brings more congestion and more intensive use of the nearby local roadways. That, however, was true when the parcel was first included in the C–1 Zone as designated in the Master Plan. More to the point, if concerns expressed by the neighboring residents about traffic congestion will suffice to support a rezoning ordinance, it may become impossible for any undeveloped parcel to be utilized, thus fueling faster and more intensive development as each property owner hurries to avoid being the owner of the last piece of undeveloped land.

Second, the concerns expressed about traffic that might be generated from the proposed development were generic complaints. Even the assertions that appeared to be based on a comparison of the proposed development, which fully complied with the requirements for the C–1 Zone, to a hypothetical development in accordance with the OP Zone, were flawed. That is, although the neighbors argued that an office building would generate traffic at hours that they found preferable to plaintiff's proposed twenty-four-hour drugstore, it is not necessarily true that rezoning the property to the OP Zone would address that concern. In fact, the OP Zone is not limited to office buildings, but would also include banks, health clubs, fitness centers and dance studios, nursing homes, extended stay facilities, assisted living and laboratory or research facilities, *see South Brunswick Township Code* § 62–1267, as permitted uses. There is no evidence in the record that those uses would not also generate traffic congestion in the volume or during the hours that were of concern to the residents.

The resolution, moreover, is enlightening for what it does not include as a part of its rationale. There is no explanation about why this parcel, zoned as C–1 and located along a corridor dotted with other areas so zoned, suddenly became appropriate to be zoned OP. That zone was designed for an entirely different part of the municipality, the Route One corridor, and prior to this decision, existed only there. That zone was created to ensure that development along the Route One corridor proceeded on a particular path well-suited for that part of town, which is why the Master Plan defined the OP Zone solely in terms of the comprehensive plan for Route One.

At the same time, the Master Plan defined the C–1 Zone in terms of Route 27, where plaintiff's parcel is located. In light of the role that each of these zones played in the comprehensive plan as expressed in the Master Plan, the failure of the municipality to explain why or how it became appropriate to apply to plaintiff's land a zone that by definition applies to a part of town with unique

planning characteristics suggests that the choice was entirely arbitrary.

■ As we have previously held, "the fundamental question in all zoning cases 'is whether the requirements of the ordinance are reasonable under the circumstances.'" *Pheasant Bridge Corp., supra,* 169 *N.J.* at 290, 777 *A.*2d 334 (quoting *Vickers v. Twp. Comm. of Gloucester,* 37 *N.J.* 232, 245, 181 *A.*2d 129 (1962), *cert. denied,* 371 *U.S.* 233, 83 *S.Ct.* 326, 9 *L.Ed.*2d 495 (1963)). Tested against this standard, we conclude, as did the trial court, that the decision of the municipality to rezone plaintiff's property was arbitrary, capricious and unreasonable.

### B.

■ We are persuaded by plaintiff's alternate argument that the decision to rezone this property constituted inverse spot zoning as well. Generally, we have defined spot zoning to be "the use of the zoning power to benefit particular private interests rather than the collective interests of the community." *Taxpayers Ass'n of Weymouth Twp., Inc. v. Weymouth Twp.,* 80 *N.J.* 6, 18, 364 *A.*2d 1016 (1976), *cert. denied,* 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977).

We afforded the concept, and the underlying principles that inform the court's analysis of a spot zoning challenge, an expansive description when we stated:

> The test is whether the zoning change in question is made with the purpose or effect of establishing or furthering a comprehensive zoning scheme calculated to achieve the statutory objectives or whether it is "designed merely to relieve the lot of the burden of the restriction of the general regulation by reason of conditions alleged to cause such regulation to bear with particular harshness upon it." *Conlon v. Board of Public Works of City of Paterson,* 11 *N.J.* 363, 366, 94 *A.*2d 660 (1953). If it is in the latter category, the ordinance is invalid since it is not "'in accordance with a comprehensive plan'" and in effect is "'a special exception or variance from the restrictive residential regulation, thereby circumventing the board of adjustment to which is committed by our Zoning Act ... the quasi-judicial duty of passing upon such matters, at least initially, in accordance with prescribed standards....'" *Speakman v. Mayor and Council of Borough of North Plainfield,* [8 *N.J.* 250, 257, 84 *A.*2d 715 (1951)]. Our inquiry therefore has been directed to ascertaining whether in view of the purposes of the zoning act the

action of the borough in rezoning ... represents sound judgment based on the policy of the statute "to advance the common good and welfare" or whether it is arbitrary and unreasonable and furthers "purely private interests." *Schmidt v. Board of Adjustment of City of Newark,* 9 *N.J.* 405, 422, 88 *A.*2d 607 (1952). [*Borough of Cresskill v. Borough of Dumont,* 15 *N.J.* 238, 249–50, 104 *A.*2d 441 (1954).]

■ As we have explained it, "[s]pot zoning is the antithesis of ... planned zoning.... [T]he test is whether the particular provision of the zoning ordinance is made with the purpose or effect of furthering a comprehensive scheme or whether it is designed merely to relieve a lot or lots from the burden of a general regulation." *Palisades Props., Inc. v. Brunetti,* 44 *N.J.* 117, 134, 207 *A.*2d 522 (1965).

In our most extended discussion of these concepts, we addressed a property owner's claim that changing the zoning designation that affected only his property was inverse spot zoning. *See Petlin Assocs., Inc. v. Twp. of Dover,* 64 *N.J.* 327, 316 *A.*2d 1 (1974). In *Petlin,* the trial court found that the municipality had merely capitulated to the demands of nearby residents by "hastily enact[ing]" a change in the zoning to preclude the proposed development of one parcel, while rejecting the advice of its professional planner about the effect of the zoning change on the overall plan. *Id.* at 330–31, 316 *A.*2d 1. Although changing a zoning ordinance in response to a site plan application is not presumptively prohibited, *see Manalapan, supra,* 140 *N.J.* at 378–79, 658 *A.*2d 1230, the zoning change in *Petlin* constituted inverse spot zoning because it would have applied a zoning designation to the particular parcel that was both out of character with the surrounding area and designed for a part of the town from which the affected parcel was significantly separated. *See Petlin, supra,* 64 *N.J.* at 331–32, 316 *A.*2d 1. We explained that

[T]he zoning changes affecting the property in question were not in furtherance of sound comprehensive zoning.... The record demonstrates that no real consideration was given to how the property would fit into an integrated and comprehensive zone plan, but rather that the various enactments were designed to affect only the use of plaintiff's property, i.e., inverse spot zoning.

[*Id.* at 331, 316 *A.*2d 1.]

As the United States Supreme Court has recognized, any "land-use decision which arbitrarily singles out a particular parcel for different, less favorable treatment than the neighboring ones" is reverse or inverse spot zoning. *Penn Cent. Transp. Co. v. N.Y. City*, 438 *U.S.* 104, 132, 98 *S.Ct.* 2646, 2663, 57 *L.Ed.*2d 631, 633 (1978); *see Manalapan Realty v. Twp. Comm. of Manalapan*, 272 *N.J.Super.* 1, 13, 639 *A.*2d 318 (App.Div.1994), *aff'd*, 140 *N.J.* 366, 658 *A.*2d 1230 (1995). Although the MLUL does not define either spot zoning or inverse spot zoning, both concepts are imbedded in the principles of sound and comprehensive planning that pervade that statutory framework, and we see no basis on which to conclude that the post-*Petlin* adoption of *N.J.S.A.* 40:55D–62(a) suggests otherwise. *See generally* William M. Cox, *Zoning and Land Use Administration* § 34–8.2 (2008). The emphasis, of course, is on the arbitrary nature of the decision rather than simply upon whether a particular parcel has received beneficial or detrimental treatment.

 Tested against these criteria, Ordinance 15–05 constitutes inverse spot zoning and therefore cannot be sustained. It is not simply that the zoning for plaintiff's parcel was changed, or that it will now be more difficult for the owner to develop it in accordance with the new zoning designation when its proposed site plan was completely in accord with the previously-designated zone. It is not only that the neighboring property owners were the impetus for the change, or that the new zone was originally designed for an entirely different part of the town and for different planning purposes or that the new zone does not further a comprehensive plan. It is not merely that the planning board or the municipality's governing body acted without hearing from expert planners or consultants that makes this ordinance defective. Rather, it is the combination of those facts that marks this decision as an example of inverse spot zoning and makes the choice of the governing body both arbitrary and capricious.

We do not intend to imply that it can never be appropriate to change the zoning designation of what is, in effect, the last

undeveloped parcel in a town or in a discrete geographic area of a municipality. To be sure, the zoning designation of undeveloped land can be changed either as part of a reexamination of a Master Plan or through the statutorily-authorized enactment of a zoning ordinance inconsistent with the Master Plan. In the case of a zoning change based on a Master Plan reexamination, the process itself will be founded on a broad focus and the creation of a comprehensive plan for overall development in the community. Altering the zoning designation of any particular parcel as a part of that process presumably will be based on a vision for the future and a plan that will balance the rights of the owners of all of the parcels, both developed and undeveloped.

Similarly, in the case of the enactment of an ordinance inconsistent with the Master Plan, see N.J.S.A. 40:55D–62(a), requiring the governing body to articulate its reasons for departing from the comprehensive plan envisioned in the Master Plan serves to prevent the municipality from acting in an arbitrary or capricious fashion.

There are sound reasons for requiring that zoning decisions be based on broad, comprehensive plans for growth and development throughout the community at large. Much of our zoning and land use jurisprudence is based upon constitutional concerns, balancing vested property rights, protected by the takings clause, against the larger concerns for the general good and welfare of the public as expressed through their elected and appointed officials. See, e.g., Penn Cent. Transp., supra, 438 U.S. at 123–30, 98 S.Ct. at 2659–62, 57 L.Ed.2d at 648–52. In that context, the broader view expressed through a comprehensive planning process ensures that zoning decisions do not violate property owners' constitutional rights.

In those situations that we have come to refer to as spot zoning and inverse or reverse spot zoning, we see these competing concerns clearly. In the case of spot zoning, the owner of a particular parcel seeks to reap the benefit of a zoning decision, by special ordinance or by variance, which treats his or her property

more favorably than the comprehensive plan would allow, to the detriment of the larger community or the immediate neighbors. In inverse spot zoning, it is the neighboring community that seeks to reap a benefit by imposing its particular view, contrary to the previously generated comprehensive plan, upon the specific parcel, to the detriment of the rights of that parcel's owner.

This dispute well illustrates the intersection between the interests of the larger community and the vested interests of a particular property owner. The former, ordinarily expressed through a comprehensive planning mechanism, would permit this property owner to develop its parcel in accordance with the site plan application that it submitted. The interests of the neighboring property owners, however, demanded that a different zone, presumably with a different eventual development of this parcel, would be more to their liking, regardless of the effect on this property owner and regardless of whether or not the new zone would coincide with a comprehensive plan. Although we respect the authority of the legislative body to respond to the citizens, unless we can be confident that its power has not been exercised for a purpose that arbitrarily imposes a burden on this property owner, we cannot permit it to stand.

### III.

The judgment of the Appellate Division is reversed and the judgment of the Law Division is reinstated.

Justice ALBIN, dissenting.

Residents of South Brunswick Township petitioned their town council to amend the zoning ordinance for a portion of Route 27, to restrict plaintiff Riya Finnegan, LLC from building a twenty-four-hour drugstore and other commercial establishments that would exacerbate traffic, noise, safety, and other quality-of-life conditions for hundreds of residents within the immediate area. After conducting an extensive public hearing, the Township Council, in compliance with *N.J.S.A.* 40:55D–62(a), rezoned plaintiff's proper-

ty from Neighborhood Commercial (C–1) to Office Professional (OP).

I cannot agree with the majority that the democratic exercise of the Township's will through the legislative process, as authorized by *N.J.S.A.* 40:55D–62(a), was arbitrary and capricious. In striking down the zoning amendment, the majority has substituted its own "equitable" judgment for a lawfully-enacted zoning ordinance addressing public safety and quality-of-life issues of concern to South Brunswick's residents. I respectfully dissent, and would affirm the judgment of the Appellate Division and uphold the zoning amendment. *See Riya Finnegan, LLC v. Twp. Council of S. Brunswick,* 394 *N.J.Super.* 303, 306–07, 318–19, 926 *A.*2d 402 (App.Div.2007).

## I.

This case involves the zoning powers of a municipality under the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to—163. A municipality's "[p]ower to zone" is specifically defined in *N.J.S.A.* 40:55D–62(a). That statute provides:

> The governing body may adopt or amend a zoning ordinance.... Such ordinance shall be adopted after the planning board has adopted the land use plan element and the housing plan element of a master plan, and all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements; *provided that the governing body may adopt a zoning ordinance or amendment or revision thereto which in whole or part is inconsistent with or not designed to effectuate the land use plan element and the housing plan element, but only by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes when adopting such a zoning ordinance ....*
>
> [*N.J.S.A.* 40:55D–62(a) (emphasis added).]

The statute reflects the Legislature's public policy to give municipalities the breathing space to adjust zoning and land use plans to reflect changing circumstances. *See Willoughby v. Planning Bd. of Twp. of Deptford,* 306 *N.J.Super.* 266, 279, 703 *A.*2d 668 (App.Div.1997) (noting that the effect of *N.J.S.A.* 40:55D–62 is to "confer[ ] the responsibility for determining a municipality's

land use plan upon the governing body, composed of the people's elected representatives"). A master plan is not a straitjacket that forbids a municipality from improving its laws. By conferring authority on a municipality to amend zoning ordinances, even when inconsistent with the master plan, *see N.J.S.A.* 40:55D–62(a), the Legislature simply recognized that laws originally enacted may be imperfect and must evolve to meet a community's changing conditions and needs. The Legislature vested authority in the municipality's democratically-elected governing body to make necessary amendments to its zoning ordinances, provided those amendments comply with *N.J.S.A.* 40:55D–62(a).

Here, the Township complied with the statutory requirements of *N.J.S.A.* 40:55D–62(a). Plaintiff applied for site plan approval for a "14,690 square foot pharmacy with drive thru window, a 29,092 square foot retail building with [a] 6,800 square [foot] second story office and a 9,000 square foot office building" on 12.69 acres of property located on Route 27. *Riya Finnegan, LLC, supra,* 394 *N.J.Super.* at 307–08, 926 *A.*2d 402. That property, which represented the largest single undeveloped parcel in the C–1 zone, abutted 300 single-family homes, a nearby elementary school, and a park. Residents appealed to the Township Council to amend the zoning of plaintiff's nearly thirteen-acre property from C–1 to OP. They expressed fear that plaintiff's commercial shopping center would dramatically increase vehicular traffic and safety hazards, particularly to children, on already congested streets, and increase noise, lighting, and litter to unacceptable levels. One resident presented a land-use analysis of the more than three-mile stretch of highway in question, showing that the highway already was overdeveloped with more than one hundred commercial establishments.

In response, the Township Council referred the issue to the Planning Board, as required by *N.J.S.A.* 40:55D–64. After extensive public input, the Planning Board voted unanimously to recommend that the Township Council rezone plaintiff's property to OP.

The Township Council then conducted a public hearing at which both residents and plaintiff's attorney expressed their views. A resident, who had lived in the Township for twenty-one years, cited a traffic expert's conclusion that there would be a voluminous increase in traffic at various hours on Saturday. Other residents, who presented accident data for the area, voiced their concern that the heightened traffic would lead ultimately to increased numbers of vehicular and pedestrian accidents.

After taking all of the residents and plaintiff's concerns into consideration, the Township Council voted unanimously to rezone plaintiff's approximately thirteen-acre parcel to OP. *See N.J.S.A.* 40:55D–62(a) (stating that zoning amendment inconsistent with master plan requires "affirmative vote of a majority of the full authorized membership of the governing body"). The Council placed the reasons for its findings in a resolution. *See ibid.* (stating that "the reasons of the governing body for so acting [shall be] set forth in a resolution").

Among the findings included in the resolution were that (1) rezoning the property would "significantly protect the health, safety and welfare of the residents and motorists in the area"; (2) "the development of a shopping center or other large commercial retail facility, as permitted in the C–1 zone, would be too intense for this 12.69 acre parcel, which is not compatible to the residential properties immediately adjacent to it"; (3) "according to the accident data presented," the site to be commercially developed "is already an area where accidents are prone to occur"; (4) "the property is more appropriately zoned OP . . . [because] office use tends to generate less traffic than commercial since commercial can be open 24 hours a day while offices are generally closed nights and weekends"; (5) the "over development" of the "Route 27 corridor over the last seven years has made it ideal for application of the OP standards"; (6) the zoning amendment "is more in keeping with the general comprehensive plan of this area"; and (7) "rezoning will not prevent the owner from develop-

ing the property consistent with the OP zone standards." [1]

Those findings articulated in the resolution were grounded on precise (not generic) information provided by local residents and on the commonsense inferences drawn by the council members who were familiar with the area to be developed. The Council did not need to hear from a civil engineer or a land-use planning expert to understand that plaintiff's intended commercial development would exacerbate safety and health concerns of the residents living within the immediate area of the Route 27 corridor. The Council enacted an amended zoning ordinance that conformed to the "general comprehensive plan of this area" and that promoted the general welfare of the community.

That the source of the zoning amendment was citizens petitioning their government should be of no concern. *See Manalapan Realty v. Twp. Comm.*, 140 *N.J.* 366, 378–79, 658 *A.*2d 1230 (1995) ("That a municipality may change its zoning ordinance during the pendency of a site plan application is beyond question. This is so even if the ordinance is amended in direct response to a particular application."). That one approximately thirteen-acre parcel of property rather than thirteen one-acre parcels of property is subject to the zoning amendment should not alter the analysis. *See Kozesnik v. Montgomery*, 24 *N.J.* 154, 172, 131 *A.*2d 1 (1957) ("Dissimilar treatment does not inevitably bespeak capriciousness. If all property similarly situated had to be accorded identical treatment, the objective of a well-balanced community might be frustrated."). The point is that the Council acted to further the general welfare of the community with a comprehensive plan in mind. *Ibid.* ("The final test must be whether the municipality is

---

[1] Indeed, within the OP zone, plaintiff can build professional and medical offices, banks, health clubs, fitness centers, dance studios, travel agencies, conference centers, nursing homes, extended-stay facilities, child care, assisted living and laboratory or research facilities. Because the property has not been stripped of its economic value by the zoning change, there is not a "taking" of land in any constitutional sense. *See Penn Cent. Transp. Co. v. N.Y. City*, 438 *U.S.* 104, 136, 98 *S.Ct.* 2646, 2665, 57 *L.Ed.*2d 631, 655 (1978).

seeking to advance the community interest rather than some private or sectional advantage." (citation omitted)).

The Council's findings presented in its resolution are entitled to deference by this Court. Moreover, as with all duly-enacted laws, a zoning ordinance is presumed to be valid. *See Riggs v. Long Beach,* 109 *N.J.* 601, 610–11, 538 *A.*2d 808 (1988). That presumption of validity can be overcome only by a showing that "the ordinance is 'clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute.' " *Ibid.* (quoting *Bow & Arrow Manor v. Town of West Orange,* 63 *N.J.* 335, 343, 307 *A.*2d 563 (1973)); *see also id.* at 611, 538 *A.*2d 808 (noting that "[t]he party attacking the ordinance bears the burden of overcoming the presumption" (citing *Ward v. Montgomery Twp.,* 28 *N.J.* 529, 539, 147 *A.*2d 248 (1959))).

It is not the role of this Court to second-guess the policy choices made by the council members or judge the wisdom of the ordinance, but only to determine whether the law comports with the MLUL and the Constitution. *See Bd. of Educ. v. Caffiero,* 86 *N.J.* 308, 318, 431 *A.*2d 799 (1981). Here, the Township Council faithfully followed every dictate of *N.J.S.A.* 40:55D–62(a) in passing the zoning amendment and presented rationally-based findings in a resolution to support the amendment. Unlike the majority, I cannot conclude that the Township acted in a "clearly arbitrary, capricious or unreasonable" manner.

## II.

Additionally, I do not agree with the majority that a rationally-based zoning amendment enacted pursuant to *N.J.S.A.* 40:55D–62(a)—a statute that contemplates the enactment of zoning amendments inconsistent with the master plan-can be vitiated on the basis of the judicially—created equitable doctrine of "inverse spot zoning." The majority characterizes the zoning amendment of the South Brunswick Township Council as inverse spot zoning, using as its template *Petlin Associates, Inc. v. Township of Dover,* 64 *N.J.* 327, 316 *A.*2d 1 (1974), this Court's "most extended

discussion" of inverse spot zoning. However, this case is distinguishable from *Petlin* in two significant ways.

First, the MLUL and, more particularly, the statutory grant of authority to municipalities under *N.J.S.A.* 40:55D–62(a) to pass zoning amendments *inconsistent* with the master plan did not exist at the time we decided *Petlin,* which preceded the effective date of the MLUL by nearly seventeen months. *See L.* 1975, *c.* 291, *s.* 82. At least textually, the land-use statutory law that predated the MLUL did not specifically authorize municipalities to adopt zoning ordinances *inconsistent* with a master plan. Because *N.J.S.A.* 40:55D–62(a) has granted zoning powers to municipalities that were not in our statutory law at the time of our holding in *Petlin,* that case may have limited value in resolving the present issue.

Second, *Petlin's* facts are not in any way similar to those in the case before us. In *Petlin,* we found that inverse spot zoning existed because the municipality gave "no real consideration ... to how the property would fit into an integrated and comprehensive zone plan" and that "various enactments were designed to affect only the use of plaintiff's property." *Petlin, supra,* 64 *N.J.* at 331, 316 *A.*2d 1. The Court found that the rezoning was "questionable on its face," in part, because Dover Township's own planning engineer had recommended against the zoning change and the Township's governing body disregarded this recommendation. *Ibid.*

On the other hand, in this case South Brunswick Township considered the commercial overdevelopment of the Route 27 corridor and considered how rezoning plaintiff's property would improve the community's overall comprehensive plan and the "health, safety and welfare" of its residents. Unlike in *Petlin,* here in the prerogative writ action before the trial court, South Brunswick's director of planning and community development gave his opinion that the change in zoning would "clearly lead to enhanced protection of the health, safety and welfare of [area] residents" and that "[t]he Council's decision to rezone clearly

reflected a response to [ ] negative impacts to the existing residential development."

Thus, *Petlin* does not support the majority's nullification of South Brunswick's zoning amendment, which was not only authorized by *N.J.S.A.* 40:55D–62(a), but also grounded in rational findings made by the Township Council.

### III.

Finally, a word must be said about the source of authority for the doctrine of "inverse spot zoning." To the extent that authority is equitable in nature, that is, a judicially-created doctrine that finds its roots in notions of fairness, it must give way to statutory law. *Oberhand v. Dir., Div. of Taxation,* 193 *N.J.* 558, 582, 940 *A.*2d 1202 (2008) (Long, J., dissenting) (finding that this Court cannot use its equitable "power to disregard clear legislative enactments because they are not in conformity with the court's view of what is fair"). As the axiom goes, " 'equity follows the law.' " *Dunkin' Donuts of Am. v. Middletown Donut Corp.,* 100 *N.J.* 166, 183, 495 *A.*2d 66 (1985) (citation omitted). We cannot as a Court take away authority statutorily granted to municipalities based on our own concepts of fairness. So long as the zoning amendment was rationally based, even though inconsistent with the master plan, as permitted by *N.J.S.A.* 40:55D–62(a), this Court has no power to remake the law in its own image. *See Lewis v. Harris,* 188 *N.J.* 415, 461, 908 *A.*2d 196 (2006) ("[A] court must discern not only the limits of its own authority, but also when to exercise forbearance. . . ."); *Oberhand, supra,* 193 *N.J.* at 574, 940 *A.*2d 1202 (Albin, J., concurring) ("The source of a court's powers to declare a law invalid rests on the higher law of our constitutions, not on judicially-crafted equitable principles.").

### IV.

For the reasons I have given, I would affirm the judgment of the Appellate Division which upheld South Brunswick's zoning amendment. I therefore respectfully dissent.

Justice LONG joins in this opinion.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LaVECCHIA, WALLACE, RIVERA–SOTO and HOENS—5.

*For affirmance*—Justices LONG and ALBIN—2.